IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AMBROSE A OBINNA WARRIOR<br><br>Defendant. | CRIMINAL NO. 23-cr-299-SAG<br><br>(Wire Fraud, 18 U.S.C. § 1343; Money Laundering, 18 U.S.C. § 1957; Aiding and Abetting, 18 U.S.C. § 2; Forfeiture, 18 U.S.C. § 981(a)(1)(C) and 982; 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c))<br><br>**UNDER SEAL** |

**SUPERSEDING INDICTMENT**

**COUNTS ONE THROUGH FIVE**

(Wire Fraud)

The Grand Jury for the District of Maryland charges:

At times material to this Indictment:

**Introduction**

1. **AMBROSE A OBINNA WARRIOR ("WARRIOR")** resided in Maryland. Between in or about March 2018 and in or about August 2021, he lived in Baltimore City and/or Baltimore County, Maryland.

2. The individuals with the initials B.E., B.W., M.F., C.V., D.H., J.R., J.C., L.V., R.C., R.L., R.H., and S.T. were real persons living in South Dakota, California, New York, Indiana, Montana, Iowa, Oregon, Puerto Rico, Pennsylvania, Utah, Oregon, and Hawaii, respectively.

3. Victim Business #1 was a real company with its principal office in Florida.

4. Victim Business #2 was a real company with its principal office in Kansas.

5. Victim Business #3 was a real company with its registered office in Bulgaria.

6.      Wells Fargo Bank ("Wells Fargo"), PNC Bank ("PNC"), BB&T Bank ("BB&T"), Sun Trust Bank ("Sun Trust"), and State Employees Credit Union ("SECU") were financial institutions as defined in 18 U.S.C. § 20.

**Relevant Terms**

7.      A "romance scheme" is typically operated by using false online personas to befriend victims online. The perpetrator attempts to develop a romantic relationship online with the victim, and eventually suggests an urgent financial need, such as a legal problem, serious illness, or need for money to travel, and pressures the victim to provide assistance. There is usually a promise of return of money or a future in-person relationship.

8.      An "investment scheme" typically starts on social media, a dating app, or through an unexpected e-mail, text message, or phone call. The perpetrator pitches an investment opportunity to "make lots of money" with "little to no risk." Victims are usually asked to send "fees" to facilitate the purported investment, which may be overseas, and receive nothing in return.

9.      A "business e-mail compromise scheme" typically attempts to intervene in an anticipated business transaction and divert the payments to an account controlled by the perpetrators. The perpetrators may attempt to impersonate the chief executive officer of a business or a representative of a vendor by spoofing that person's e-mail address or gaining unauthorized access to their e-mail. They will then provide payment instructions to persons operating in the accounts payable department or other persons responsible for sending payments for the company.

10.     These schemes and other similar schemes are often operated from outside of the United States and target older adults. In order to avoid suspicion of the victims and their banks, the perpetrators need to be able to provide United States bank accounts to victims to help convince the victims that the request is legitimate and not a fraud and to avoid raising red flags at the bank.

2

## THE SCHEME TO DEFRAUD

11. From in or about March 2018 to in or about August 2021, in the District of Maryland and elsewhere, the defendant,

## AMBROSE A OBINNA WARRIOR

knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (the "scheme to defraud").

## THE OBJECT OF THE SCHEME TO DEFRAUD

12. It was the object of the scheme to defraud for **WARRIOR** to personally enrich himself by fraudulently obtaining and attempting to obtain money and property from victims for his own personal use and benefit, and for the personal benefit and use of his associates by means of romance, investment, business email compromise, and other schemes.

## MANNER AND MEANS

13. It was further part of the scheme to defraud that **WARRIOR** opened a bank account ending in 1338 at Wells Fargo, ("WF 1338"), and a bank account ending in 0969 at SECU ("SECU 0969). **WARRIOR** was the only signatory on each account.

14. It was further part of the scheme to defraud that in or about June 2018, **WARRIOR** formed a Maryland limited liability company called The Golden Voice Of Orientals ("Golden Voice"), which allegedly involved musical performances. **WARRIOR** was listed as the sole member and resident agent of Golden Voice.

15. It was further part of the scheme to defraud that **WARRIOR** opened the bank accounts listed below, which were listed in the name of Golden Voice, and on which **WARRIOR** was the only signatory:

   a. a bank account ending in 5186 at Sun Trust ("ST 5186");

   b. a bank account ending in 2040 at BB&T ("BBT 2040");

   c. a bank account ending in 0815 at PNC ("PNC 0815"); and

   d. a bank account ending 0806 at SECU ("SECU 0806").

16. It was further part of the scheme to defraud that **WARRIOR** used WF 1338, ST 5186, BBT 2040, PNC 0815, SECU 0969, and SECU 0806 to receive and transfer victim funds.

17. It was further part of the scheme to defraud that **WARRIOR** communicated bank account information to others, including via WhatsApp.

18. It was further part of the scheme to defraud that victims were contacted online, by e-mail, and over the phone with the intent to fraudulently induce the victims to provide money and property.

19. It was further part of the scheme to defraud that individuals assumed fictitious identities, posed as a love interest, and developed what the victims believed was a romantic relationship with the victims.

20. It was further part of the scheme to defraud that **WARRIOR** caused gifts, including flowers, to be sent to victims that purported to be from the individuals with whom they were in a romantic relationship.

21. It was further part of the scheme to defraud that the victims were falsely told by their alleged romantic partners that the partners had suffered various crises and required urgent financial assistance.

22. It was further part of the scheme to defraud that individuals used other ruses, such as false investment and business opportunities, to fraudulently obtain and attempt to obtain funds from victims.

23. It was further part of the scheme to defraud that the victims were directed to send money and property to **WARRIOR**, including by check, wire transfer, and money order.

24. It was further part of the scheme to defraud that **WARRIOR** received funds from victims of romance, investment, business e-mail compromise and other schemes.

25. It was further part of the scheme to defraud that after depositing funds from victims in accounts under his control, **WARRIOR** retained a portion of the funds as a fee and caused other persons to receive a portion of the fraudulent funds. In total, **WARRIOR** obtained more than $500,000 from the victims.

**Additional Information About Particular Victims**

26. It was further part of the scheme to defraud that in or about 2016 through in or about 2021, **WARRIOR** and others caused false and fraudulent pretenses, representations, and promises to be made to B.E., including causing B.E. to believe the following:

    a. B.E. was in a romantic relationship with a person named Roxanne Smith ("Roxanne").

    b. Roxanne worked for Doctors Without Borders in Nigeria, and was arrested in Germany because someone had placed bundles of illicit cash in her bags.

    c. **WARRIOR** was working to obtain Roxanne's release from custody in Germany.

27. It was further part of the scheme to defraud that in or about March 2018 through in or about October 2018, **WARRIOR** received checks from B.E.'s accounts at CorTrust Bank, Farm Credit Services of America, and Farmer's State Bank, which **WARRIOR** deposited in WF 1338.

28. It was further part of the scheme to defraud that in or about November 2018 through in or about March 2019, **WARRIOR** and others caused false and fraudulent pretenses, representations, and promises to be made to M.F. including causing M.F. to believe the following:

   a. M.F. was in a romantic relationship with a person named Matthew Thompson ("Matthew").

   b. Matthew required financial assistance while working overseas in Nigeria and funds were to be sent to the attention of Golden Voice.

29. It was further part of the scheme to defraud that in or about March 2019, **WARRIOR** received $9,500 from M.F.'s savings at Santander Bank which **WARRIOR** caused to be deposited in PNC 0815.

30. It was further part of the scheme to defraud that in or about January 2019 through in or about 2020, **WARRIOR** and others caused false and fraudulent pretenses, representations, and promises to be made to C.V., including causing C.V. to believe the following:

   a. C.V. was in a romantic relationship with a person named Michael Singer ("Singer").

   b. Singer had a contract with the Red Cross for a communications system installation in Syria.

   c. One of Singer's employees was seriously injured in Syria, and Singer needed C.V. to send him money to pay the employee's hospital bills and legal fees.

31. It was further part of the scheme to defraud that in April 2019, **WARRIOR** received a $15,400 wire transfer from C.V. which was credited to PNC 0815. The wire transfer contained the following memo: "RE: MICHAEL SINGER."

32. It was further part of the scheme to defraud that beginning in or around December 2018, **WARRIOR** and others caused false and fraudulent pretenses, representations, and promises to be made to L.V., including causing L.V. to believe the following:

   a. L.V. was in a romantic relationship with a person named Jackson David ("Jackson").

   b. Jackson was a United States soldier stationed in Afghanistan.

   c. Jackson owned a large bank account in Cambodia and needed money to pay his taxes to regain access to the account.

   d. **WARRIOR** was assisting Jackson with sending the necessary tax payments.

33. It was further part of the scheme to defraud that beginning in or around January 2019 and continuing until in or around September 2019, **WARRIOR** received money orders and checks totaling more than $100,000 from L.V.'s Banco Popular account.

34. It was further part of the scheme to defraud that from in or around January 2019 to in or around September 2019, **WARRIOR** caused money orders and checks from L.V. totaling more than $100,000 to be deposited in PNC 0815 and SECU 0969.

35. It was further part of the scheme to defraud that in or around 2019 to in or around 2021, **WARRIOR** and others caused false and fraudulent pretenses, representations, and promises to be made to R.C., including causing R.C. to believe the following:

   a. R.C. was in a romantic relationship with a person named Michael Orstein ("Orstein").

      b. Orstein had a "valuable box" of gold to be delivered from Turkey and needed assistance from R.C. to accept the package and pay the transportation costs.

36. It was further part of the scheme to defraud that in or around January 2020, **WARRIOR** attempted to receive a $123,000 wire from R.C. to SECU 0806. R.C. grew suspicious, and R.C.'s bank was able to recall the wire transfer.

37. It was further part of the scheme to defraud that beginning in or around 2013, **WARRIOR** and others caused false and fraudulent pretenses, representations, and promises to be made to R.L., including causing R.L. to believe the following:

      a. R.L. had purchased gold bars in Africa to be imported to the United States;

      b. R.L. was required to advance funds for the purchase of the gold bars, taxes, fees, and storage costs, as well as court fees when the gold was seized.

38. It was further part of the scheme to defraud that on or around July 18, 2018, **WARRIOR** received a $1,000 check from R.L. which was credited to WF 1338.

## THE CHARGES

39. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**AMBROSE A OBINNA WARRIOR,**

having devised and intending to devise the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for the purpose of executing such scheme and artifice to defraud as follows:

| Count | Date | Description | Interstate Wire |
|---|---|---|---|
| 1 | 9/4/2018 | $20,000 CorTrust Bank cashier check from B.E. deposited to **WARRIOR's** WF 1338 | From Maryland to a location outside of Maryland |
| 2 | 10/1/2018 | $8,500 CorTrust Bank cashier check from B.E. deposited to **WARRIOR's** WF 1338 | From Maryland to a location outside of Maryland |
| 3 | 10/1/2018 | $8,500 personal check drawn on First National Bank, Omaha from B.E. deposited to **WARRIOR's** WF 1338 | From Maryland to a location outside of Maryland |
| 4 | 10/17/2018 | $9,000 personal check drawn on Farmers State Bank from B.E. deposited to **WARRIOR's** WF 1338 | From Maryland to a location outside of Maryland |
| 5 | 10/17/2018 | $13,500 personal check drawn on CorTrust Bank from B.E. deposited to **WARRIOR's** WF 1338 | From Maryland to a location outside of Maryland |
| 6 | 4/5/2019 | $15,400 wire transfer from C.V. deposited to **WARRIOR's** PNC 0815 | From a location outside of Maryland to Maryland |
| 7 | 7/26/2019 | Official check in the amount of $20,000 drawn on Banco Popular from L.V. deposited to **WARRIOR's** PNC 0815 | From Maryland to a location outside of Maryland |
| 8 | 7/26/2019 | Official check in the amount of $23,378 drawn on Banco Popular from L.V. deposited to **WARRIOR's** PNC 0815 | From Maryland to a location outside of Maryland |
| 9 | 1/30/2020 | $123,000 wire transfer from Wesbanco account belonging to R.C. deposited to **WARRIOR's** SECU 0806 | From a location outside of Maryland to Maryland |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS TEN THROUGH TWELVE

### (Money Laundering)

1. Paragraphs 1 through 10 of this Indictment are incorporated here.

2. Recipient #1 was a real person living in Texas.

3. On or about the dates set forth below, in the District of Maryland, and elsewhere, the defendant,

### AMBROSE A OBINNA WARRIOR,

did knowingly engage and attempt to engage in the following monetary transactions through a financial institution, in criminally derived property of a value greater than $10,000, that is the transactions indicated below, such property having been derived from a specified unlawful activity, namely wire fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 1957, and each transaction constituting a separate count:

| Count | Date | Monetary Transaction |
|---|---|---|
| 10 | 9/13/2018 | $15,000 check from **WARRIOR** via WF 1338 to Recipient #1 using funds from B.E. |
| 11 | 10/2/2018 | $12,750 check from **WARRIOR** via WF 1338 to Recipient #1 using funds from B.E. |
| 12 | 10/20/2018 | $15,750 check from **WARRIOR** via WF 1338 to Recipient #1 using funds from B.E. |

18 U.S.C. § 1957
18 U.S.C. § 2

10

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that, in the event of the defendant's conviction on any of the offenses in Counts One through Twelve of this Indictment, the United States will seek forfeiture as a part of any sentence, in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).

### Wire Fraud Forfeiture

2. Upon conviction of any of the offenses charged in Counts One through Nine of this Indictment, the defendant,

**AMBROSE A OBINNA WARRIOR**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes, or is derived from proceeds traceable to the scheme to defraud.

### Money Laundering Forfeiture

3. Upon conviction of any of the offenses charged in Counts Ten through Twelve of the Indictment, the defendant,

**AMBROSE A OBINNA WARRIOR**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

### Substitute Assets

4. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property of the defendant pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Erek L. Barron w/ perm. E&C*
Erek L. Barron
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED
Foreperson

11/14/23
Date

12